UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GERALD GREEN,

                Petitioner,

v.

PETER BEHRLE,

                Respondent.

**Hon. Hugh B. Scott**

05CV810

(CONSENT)

**Decision
&
Order**

      Before the Court is petitioner's Amended Petition for habeas relief (Docket No. 7; see Docket No. 1, Petition). Petitioner asserts the following grounds in support of his Petition: the absence of a bill of particulars; violation of due process and a fair trial in precluding petitioner from cross-examining the victim's mother; petitioner was prejudiced by the prosecution being allowed to introduce evidence on an "opened door" rationale; cumulative impact of errors depriving petitioner of a fair trial; defective Indictment; failure to properly instruct the grand jury; possibility of a non-unanimous verdict as to all acts alleged; and his sentence was harsh and excessive (id.). The parties consented to proceed before the undersigned as Magistrate Judge (pursuant to 28 U.S.C. § 636(c)) (Docket No. 5, May 24, 2006).

## BACKGROUND

*Offenses and State Court Proceedings*

      Petitioner was convicted on October 21, 2003, after trial in Monroe County Court, of a course of sexual conduct against a child in the second degree, in violation of Penal Law § 130.80(1)(a). That provision states "A person is guilty of course of sexual conduct against a

child in the second degree when, over a period of time not less than three months in duration: (a) he or she engages in two or more acts of sexual conduct with a child less than eleven years old." Id. Petitioner was convicted of repeatedly subjecting his girlfriend's less than eleven year old daughter to sexual contact from January 1999 through 2001(see Docket No. 10, Resp't Ans. to Am. Pet. ¶ 7).

He was sentenced, on November 17, 2003, to five years in prison and five years of post-release supervision (State Ct. Records, Tr., Nov. 17, 2003, at 12, App., Ex. B, Appellate Record at A5, A6, A7). On October 28, 2008, petitioner visited the Clerk's office of this Court and gave a new address that indicates that he is no longer in a New York State facility. While it would appear his habeas Petition has become moot, petitioner remains under state supervision and his Petition thus is not moot.

*Appeal*

The New York State Supreme Court Appellate Division, Fourth Department, affirmed petitioner's conviction, People v. Green, 17 A.D.3d 1076, 793 N.Y.S.2d 790 (4th Dep't 2005), holding that the failure to charge that the actor was not married was not preserved by petitioner, that the Indictment referred to the applicable section of the Penal Law and was not procedurally defective, id. at 1077, 793 N.Y.S.2d at 790. Even though petitioner's conviction rendered his objections to the legal sufficiency of the evidence before the grand jury not reviewable, the Fourth Department held that the prosecution properly defined the alleged crime to the grand jury and the evidence established a prima facie case against petitioner, id. The court then concluded that the sentence was not unduly harsh or severe and then found petitioner's remaining

contentions to be without merit, id.  The New York State Court of Appeals denied leave to appeal, People v. Green, 5 N.Y.3d 789, 801 N.Y.S.2d 810 (2005).

*Habeas Petition*

Petitioner filed his original Petition against the People of the State of New York[1] (Docket No. 1).  A response was filed on behalf of the original respondent (Docket No. 4), with the state court records.  The Court granted petitioner leave to amend the Petition to name the appropriate respondent (Docket No. 6), which petitioner later filed (Docket No. 7) and the new respondent answered (Docket No. 10).  Petitioner's Amended Petition merely names a different respondent while retaining the assertions from the original Petition.

The original Petition alleged that petitioner was denied fair trial.  He complained that he was not given a bill of particulars, especially harmful to him because of the lack of specificity of the "sexual conduct" alleged in this case.  He complained that he was precluded from cross examining the victim's mother on effect of a paternity dispute had on this case, infringing upon petitioner's confrontation right.  He also alleged that he was precluded from impeaching a witness.  Petitioner complained that the prosecution was allowed to introduce evidence of petitioner's drug use on "[open] door" rationale.  In all, petitioner concluded that the cumulative impact of these errors deprived petitioner of a fair trial.  He also complained that the Indictment was defective for not alleging the element that the victim was not married to the actor, see N.Y.

---

[1] Petitioner initially failed to name the correct party, the person who has custody over him, as respondent, instead naming the People of the State of New York. 28 U.S.C. § 2254, Rules Governing R. 2(a); see also 28 U.S.C. § 2243 (the writ of habeas corpus "shall be directed to the person having custody of the person detained"). Absent an amended Petition naming the proper respondent, this Court lacked jurisdiction over this matter, Stanley v. California Sup. Ct., 21 F.3d 359, 360 (9th Cir. 1994) (per curiam); see Padilla v. Bush, 542 U.S. 426, 447 (2004). See Docket No. 6.

3

Penal L. § 130.10(4), a defense under that statute. The grand jury also was not instructed on this not married to actor element. Petitioner raised the possibility that the verdict was not unanimous, reflecting no assurance that jurors agreed on same acts. Finally, he argued that his sentence should be reduced. (Docket No. 1, Pet.; see Docket No. 7, Am. Pet..)

      Respondent argues that petitioner's claims are without merit (Docket No. 10, Resp't Memo. of Law at 1-3). Respondent contends that petitioner's claims are questions of state procedural law not warranting federal review (Docket No. 10, Resp't Ans. ¶ 10). As for the adequacy of his bill of particulars, respondent contends that this is an issue of state evidentiary ruling that is not cognizable in federal habeas relief (Docket No. 10, Resp't Memo. at 3-4), see Crane v. Kentucky, 476 U.S. 683, 689 (1986). Petitioner hence was not entitled to a bill of particulars specifying the specific dates of abuse under New York Penal Law § 130.80 (id. at 4). Respondent concludes that petitioner received a fair trial (id. at 5-6), petitioner does not assert a federal constitutional right that was violated to have his conviction overturned, see Einaugler v. New York, 109 F.3d 836, 842 (2d Cir. 1997) (id. at 6). Next, respondent argues that petitioner's Indictment met sufficiency requirements under New York law (id. at 6-7) and the grand jury proceeding was proper, since the prosecutor included the affirmative defense under Penal Law § 130.10(4) for petitioner being married to the under age victim. As for the unanimity of the petit jury, respondent argues that this was decided on independent state law grounds that do not raise a federal constitutional issue (id. at 8). As for the sentence, respondent concludes that petitioner does not argue that his sentence was illegal, merely that he provided testimony to support a lesser sentence of three years rather than the five years imposed, not raising a

constitutional objection to the sentence (id. at 8-9).  The sentence was within the statutory range, hence it is beyond this Court's habeas review (id. at 9).

## DISCUSSION

I.    Habeas Standard

Federal habeas corpus review of a state conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, § 104 (codified at 28 U.S.C. § 2254(b)(1)) ("AEDPA").  Federal courts must give substantial deference to state court determinations that have adjudicated on federal constitutional claims "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  Habeas relief may not be granted where the state has adjudicated the merits of petitioner's claims unless the state court's action "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); see Williams v. Taylor, 529 U.S. 362 (2000).  Petitioner has the burden of rebutting the presumption of correctness of the state court determinations by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Petitioner also needs to exhaust the remedies he has available in the state courts before seeking relief in federal court.  28 U.S.C. § 2254(b)(1)(A).  Petitioner has not exhausted his remedies if he has the right under state law to raise the questions presented.  Id. § 2254(c).  The Court, however, may deny an application for habeas corpus on the merits despite the fact that the petitioner has not exhausted his state court remedies.  Id. § 2254(b)(2).  In order to exhaust a claim, the petitioner must alert the state court to the fact of the federal right was violated and must say so in both state and federal habeas courts, presenting the substance of the federal claim.

Duncan v. Henry, 513 U.S. 364, 365-66, 367 (1995) (per curiam); see Picard v. Connor, 404 U.S. 270, 278 (1971).

II.     Standard of Review

State court findings of "historical" facts, and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986). (See also 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct.")

As amended by the Antiterrorism and Effective Death Penalty Act of 1996[2] ("AEDPA"), 28 U.S.C. § 2254(d) provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The habeas corpus petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to findings both by state trial courts and by state appellate courts. Smith v. Sullivan, 1 F. Supp. 2d 206, 210-11 (W.D.N.Y. 1998) (Larimer, Ch.J.); Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert. denied, 490 U.S. 1059 (1989). As noted by then-Chief Judge Larimer in Smith, "the

---

[2]Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

new version of § 2254(d) has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court's decision was defective in some way." Smith, supra, 1 F. Supp. 2d at 211.

Prior to the enactment of the AEDPA, § 2254(d) provided that a state court "determination after a hearing on the merits of a factual issue . . . shall be presumed to be correct," unless certain specified exceptions existed. When it enacted AEDPA, Congress changed the language dealing with the presumption of correctness of state court findings of fact and moved it to § 2254(e), and also added the current version of § 2254(d). The amended statute "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v. Ahitow, 104 F.3d 926, 936 (7th Cir.1997) (quoting Emerson v. Gramley, 91 F.3d 898, 900 (7th Cir. 1996), cert. denied, 520 U.S. 1122 (1997)); see also Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir.1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion").

Initially, it should be noted that the petitioner has failed to preserve these arguments for habeas corpus review. Federal habeas review is barred when a state court expressly relied on a procedural default as an independent and adequate state ground. See Harris v. Reed, 489 U.S. 255 (1989); Wainwright v. Sykes, 433 U.S. 72 (1977). "A federal court is generally precluded from reviewing any claim included within the habeas petition for which a 'state court rests its judgment on an adequate and independent state ground, including a state procedural bar.'" Bacchi v. Senkowski, 884 F. Supp. 724, 730 (E.D.N.Y.1995) (quoting Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992) (per curiam)). A state procedural bar arises through a failure to

make a timely appeal, or through a failure to preserve a claim of appeal through contemporaneous objection. Reid, supra, 961 F.2d at 377. Failure to comply with a state's contemporaneous objection rule bars subsequent federal habeas corpus review unless petitioner is able to demonstrate both cause for the procedural default and actual prejudice attributable thereto. Wainwright, supra, 433 U.S. at 81-91 (1977); Washington v. LeFerve, 637 F. Supp. 1175, 1177 (E.D.N.Y. 1986). "In order to demonstrate cause for his procedural fault, petitioner would have to show that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Washington, supra, 637 F. Supp. at 1177 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). These principals have been applied even where a defendant represents himself at trial. Reed v. Farley, 512 U.S. 339 (1994); Wells v. LeFavre, 1996 WL 692003 (S.D.N.Y. 1996).

Here, all of petitioner's claims rest on state procedural grounds. Petitioner fails to demonstrate cause for the procedural default or actual prejudice attributable thereto.

III.     Merits–Fair Trial

Petitioner contends that numerous errors occurred in the prosecution that cumulatively deprived him of a fair trial.

A.     Bill of Particulars

First, petitioner complains that there was no meaningful bill of particulars served. Penal Law § 130.80(1)(a) outlaws a course of sexual conduct against a child when, "over a period of time not less than three months in duration," the defendant engaged in two or more acts of sexual conduct with a child less than eleven years old. The Indictment here charged that, between January 1, 1999, and November 30, 2001, petitioner over a period not less than three months

engaged in two or more such acts with a child less than eleven years old (State Court Records, App., Ex. B, App., Appellate Record at A8), with a CPL 710.30 notice attached describing defendant's statement to Children Protective Services (id., A9-10).

As an evidentiary rule, such as the adequacy of a bill of particulars, is a question of state law and not cognizable in a habeas proceeding, see Crane, supra, 476 U.S. at 689.

Petitioner submitted in support of the petitioner People v. Sedlock, 8 N.Y.3d 535, 838 N.Y.S.2d 14 (2007), arguing that Sedlock resulted in an acquittal on the same issues as his case (Docket No. 11). The New York State Court of Appeals, however, applied New York law to reverse the conviction in that case. In that case, the prosecution charged that defendant forcibly touched the sexual or intimate parts of another person over a seven-month period. The defendant there moved for a bill of particulars, which was denied. The Court of Appeals held "that the People failed to meet their duty to delineate a sufficiently narrow time frame for the alleged act," although specific dates were provided the People did not "specify a more precise time frame for the conduct at issue, or to demonstrate that they were unable to do so," 8 N.Y.3d at 539, 838 N.Y.S.2d at 17. But this resolution is as a matter of state procedural law and not federal constitutional law. Therefore, petitioner's claim on this ground is **denied**.

B.     Cross-Examination of Victim's Mother

Next, petitioner contends that his right of confrontation was violated when he was not allowed to cross-examine the victim's mother as to a paternity dispute between them or about the mother's inconsistent testimony regarding an argument about her religious beliefs.

1.       Cross-Examination on Pregnancy

The trial court precluded defense counsel from making reference to the victim's mother's pregnancy and that being a dispute between her and petitioner, even precluding counsel from asking the victim if she heard the couple fight about the pregnancy (Docket No. 1, Pet., Ex., Appellant Br. at 12-16, 26-28, quoting Tr. at 200-03).  The trial court held that defense counsel could argue that petitioner and the victim's mother generally fought (and that the victim heard these fights) but not mention this pregnancy or petitioner's possible paternity of the baby.  The trial court found that reference to this pregnancy was irrelevant to the offense charged and denied that it went to the mother's veracity.  The defense's theory (as argued on appeal) would have been that the victim's accusations stemmed from her anger from the petitioner breaking up with the mother (see id., Ex., Appellant Court of Appeals Letter Br. at 3).  Petitioner argued on appeal to the Court of Appeals that a reason to fabricate is never collateral (as was held by the Appellate Division, People v. Green, supra, 17 A.D.3d at 1077, 793 N.Y.S.2d at 790), implicating the petitioner's constitutional right to confrontation of his accusers (id. at 3-4), see Davis v. Alaska, 415 U.S. 308 (1974); Chambers v. Mississippi, 410 U.S. 284 (1973); Smith v. Illinois, 390 U.S. 129 (1968); Pointer v. Texas, 380 U.S. 400 (1965).

Respondent argues, regarding the merits of this contention, that the trial court properly exercised discretion in denying petitioner questioning of the victim's mother on that subject (Docket No. 4, Resp't Memo. at 6), pointing to the Appellate Division's conclusion that the trial court excluded collateral evidence "because it was too remote," People v. Green, supra, 17 A.D.3d at 1077, 793 N.Y.S.2d at 790 (id.), to the underlying charge.

Petitioner's right of cross-examination is not unfettered, O'Brien v. Dubois, 145 F.3d 16, 26 (1st Cir. 1998); see Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (defendant does not have the right to cross-examine "to whatever extent, the defense might wish"); Wood v. Alaska, 957 F.2d 1544, 1549 (9th Cir. 1992) (a defendant has no right to present irrelevant evidence, citing United States v. Torres, 937 F.2d 1469, 1473 (9th Cir. 1991), cert. denied, 502 U.S. 1037 (1992), and it is within the trial court's discretion to determine what is relevant). "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); Fuller v. Gorczyk, 273 F.3d 212, 219-20 (2d Cir. 2001) (reversing grant of habeas corpus on this basis). The Confrontation Clause only "guarantees an opportunity for effective cross-examination," Fensterer, supra, 474 U.S. at 20, and not effective to the extent the defense might wish, id. "When contemplating restrictions on cross-examination, a trial court must strike a constitutionally acceptable balance: although the court possesses considerable discretion to preclude repetitive, irrelevant, cumulative, or harassing interrogation, see Van Arsdall, supra, 475 U.S. at 679, it must not narrow the scope in such a way as to preclude a defendant either from meaningfully 'delving into the witness' story to test the witness' perceptions and memory' or from impeaching the witness," O'Brien, supra, 145 F.3d at 26; see Davis, supra, 415 U.S. at 316.

Here, the Supreme Court in Van Arsdall recognizes the trial court's discretion in determining whether defense cross-examination is irrelevant. The state courts here did not

11

unreasonably apply this federal law.  The trial court had the discretion to determine whether defendant's line of cross-examination was relevant or harassing.  Petitioner could have presented his theory that the young victim's accusation stemmed from her anger with defendant without going into the details of his dispute with her mother, in particular the mother's pregnancy and the paternity of that child.  He was given the opportunity to cross examine on the broader aspect of quarreling between petitioner and the victim's mother rather than the narrower, more harassing and less relevant one he desired about the mother's pregnancy.  Thus, petitioner's claim on this ground is **denied**.

                      2.        Restrictions on Questioning about the Mother's Religious Beliefs

As for the mother's beliefs, prior to jury selection the prosecution moved to preclude questioning about Wicca, what petitioner terms "witchcraft," practiced by the mother.  Petitioner argued that such questioning should be allowed since he and the mother argued about her practices.  The prosecution's motion was granted.  The prosecution later renewed its motion and the trial court allowed questioning about fights over the mother's religious beliefs generally but without reference to a specific belief. (Docket No. 1, Pet., Ex., Appellant Br. at 16, citing Tr. at 22-23, 199-200.)  During the mother's cross-examination, petitioner asked if she had fights with him regarding differences in religion and she denied it.  Petitioner's counsel then asked if petitioner walked into one of the mother's Wicca ceremonies, at which point the prosecution objected and a sidebar conference outside of the presence of the jury was held.  (State Court Records, Tr. at 351.)  The trial court allowed petitioner to ask about arguments he had with the mother regarding religion to show that the mother somehow talked the victim into lying about this offense but the scope of that questioning was to be limited by the earlier ruling against

discussing the mother's religious beliefs or go into prejudicial material that might inflame the jury (id., Tr. at 354). During that sidebar conference, the mother was then asked if she had "very heated" arguments with petitioner (in the victim's presence) about the mother's religious practices and she answered "sometimes" (Docket No. 1, Pet., Ex., Appellant Br. at 17, citing Tr. at 357). But when the jury returned, the mother testified that she did not consider these arguments to be heated (id., citing Tr. at 362-63). A second sidebar conference was held and petitioner argued that the mother contradicted her prior testimony in her characterization of the nature of the arguments but the court refused to have the record read back and relied upon its recollection (Tr. 362-63; see Docket No. 1, Pet., Ex., Appellant Br. at 17-18). Petitioner concludes that denying questioning on this line impacted on his right of confrontation and due process under the Fifth, Sixth, and Fourteenth Amendments (id. at 32).

Petitioner's specific objection was to the trial court not reviewing the record before deciding whether the mother contradicted her prior, sidebar testimony. The trial court here (instead of having the transcript read back from a sidebar conference) relied upon its memory of what the mother said in an earlier sidebar. Petitioner fails to establish that a federal constitutional right was violated by the judge relying upon her memory rather than on the transcript. A review of the transcript shows petitioner's counsel characterizing the arguments on the mother's beliefs as being "very heated" and the mother initially testifying that they were "sometimes" (State Court Records, Tr. at 357) and later, before the jury, denied that the arguments were "heated" (id., Tr. at 361). These are evidentiary rulings (whether to allow questioning about the mother's religious practices, whether the Court would have the record read back on the mother's inconsistent statements) and a question of state law and the exercise of

13

discretion by the trial court and not cognizable in a habeas proceeding, see Crane, supra, 476 U.S. at 689, and federal habeas review of evidentiary rulings are limited to determining whether the error rose to the level of a constitutional violation, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); George v. Lord, 334 F. Supp. 2d 327, 333 (E.D.N.Y. 2004).  Thus, the Petition on this ground is **denied** as well.

    C.    Introduction of Evidence of Petitioner's Drug Use

Petitioner complains that he was denied a fair trial because the prosecution was allowed to introduce evidence of his drug use.  Petitioner asserts that the prosecution, over petitioner's objections, asked the victim's mother about petitioner's drug use, arguing that the door was opened when petitioner asked the mother if she viewed him as a stable person within her household (see Docket No. 1, Pet., Ex., Appellant Br. at 33, citing Tr. at 378-80, 380-84, 385-86).  Petitioner asked the mother in cross-examination whether she took drugs while petitioner was in the household and asked whether petitioner was the "very stable person" within that household (State Court Records, Tr. 331).  The prosecution argued that petitioner opened the door by asking about the mother's drug use and reference to petitioner being the stable one (id., Tr. at 379).

Petitioner rests on only state law for the limitations on the scope of opening the door (Docket No. 1, Pet., Ex., Appellant Br. at 33-34), see People v. Melendez, 55 N.Y.2d 445, 451-52, 449 N.Y.S.2d 946, 950 (1982).  The Appellate Division, however, rejected this contention as being meritless and without further comment, People v. Green, supra, 17 A.D.3d at 1077, 793 N.Y.S.2d at 790.

Petitioner has not raised a federal law violation by either the trial court's allowance of this line of questioning or shown an unreasonable determination of facts in light of the evidence introduced. Melendez itself recognized the discretion of the trial court in the conduct of cross-examination and redirect examination, see 55 N.Y.2d at 451, 449 N.Y.S.2d at 950, and applied exclusively New York State law in defining when "opening the door" allows for redirect beyond the scope of the cross-examination, id. at 451-52, 449 N.Y.S.2d at 950. The prejudice/probative balance for allowing this questioning was within the discretion of the trial court. Petitioner opened the door to questions about aspects of his stability, including his drug use, by asking the mother in cross-examination whether he was the stable one in that household (after asking her about her own drug use). When the mother answered "no" to the question that petitioner was more stable, the prosecution could explore what ways petitioner destabilized the household or was less stable than her, including his drug use.

Therefore, this ground for relief is **denied**.

D.    Cumulative Effect of Above Errors

Petitioner concludes that the cumulative effect of the above errors shows that he was deprived of a fair trial. Respondent contends that petitioner does not assert allegations to support his claim that his conviction was obtained in violation of his federal rights (Docket No. 4, Resp't Memo. at 7). As noted above in the separate grounds, petitioner's claims cumulatively do not indicate that a constitutionally unfair trial has occurred. This ground is **denied**.

IV.    Defective Indictment and Grand Jury Instructions

Petitioner next argues that the Indictment was defective for not noting an exception element to the offense charged under Penal Law § 130.80(1) and that the grand jury was not

advised of this element before issuing the Indictment. Respondent first points out that petitioner failed to preserve the issue for his initial appeal and this procedural waiver on state law grounds is an independent and adequate state ground for denying habeas relief (Docket No. 4, Resp't Memo. at 7, 8). Petitioner has not shown any prejudice from this state procedural bar. The Appellate Division also found that the grand jury defect asserted was not reviewable because petitioner's conviction was based on legally sufficient evidence, People v. Green, supra, 17 A.D.3d at 1077, 793 N.Y.S.2d at 790 (id. at 8), and in the alternative, that the prosecution properly defined the crime to the grand jury, including the affirmative defense, id. (id.).

Again, petitioner relies exclusively on New York State law and a general conclusion that his due process rights were violated. These grounds are also **denied**.

V. Unanimous Verdict

Petitioner next contends that the trial jury's verdict may not have been unanimous as to all acts alleged. The victim testified to at least eight incidents. Petitioner contends that it was not clear that at least six jurors agreed to the facts of any two incidents to establish that petitioner engaged in a course of sexual conduct. (Docket No. 1, Pet., Ex., Appellant Br. at 43.) Respondent replies that petitioner really is arguing the sufficiency requirements as a matter of state law, not saying that the ruling was unreasonable or contrary to federal law (Docket No. 4, Resp't Memo. at 9). The Appellate Division also denied this ground without discussion, People v. Green, supra, 17 A.D.3d at 1077, 793 N.Y.S.2d at 790.

Petitioner cites Supreme Court precedents that require at least six jurors of a twelve member panel must agree as to the elements of an offense to have a constitutional trial by jury (Docket No. 1, Pet., Ex., Appellant Br. at 42-43), see Burch v. Louisiana, 441 U.S. 130 (1979)

16

(conviction by five members of six-person jury violates Sixth and Fourteenth Amendments); Brown v. Louisiana, 447 U.S. 323 (1979) (applying Burch retroactively to pending appeals based on five to one verdicts).

The jury instruction outlined the offense charged, that the jury had to find that the prosecution proved that petitioner engaged in two or more acts of sexual conduct with the victim and the victim was less than eleven years old (State Ct. Records, Tr. at 484-86). The jurors were told that their verdict had to be unanimous (id. Tr. at 489). The jury then rendered its verdict, announced it was unanimous, and petitioner had the jury polled and each juror indicated that he or she agreed with the verdict "in all respects" (id. Tr. at 495-97).

The basis for petitioner's objection is the alleged duplicitous nature of the charge in the Indictment (see Docket No. 1, Pet., Ex., App. Br. at 42-43). The Indictment charged a single violation of Penal Law § 130.80(1)(a) which involves a course of sexual conduct, that is multiple acts over time. The prosecution thus needed to prove those multiple acts in order to convict petitioner (see State Ct. Records, Tr. at 484, 486). Aside from his denied motion to dismiss this case on duplicity grounds, he has no basis for asserting that the verdict may not have been unanimous on the same facts. Petitioner is speculating that the jurors disagreed to the point of not selecting two or more incidents that constituted the offense charged. The jurors were polled that they agreed with the verdict in all respects and petitioner did not ask for a further detailed poll as to the particular incidents the jurors believed occurred. The federal cases cited are distinguishable because Louisiana procedure allowed for a five-sixth vote to convict, see, e.g., Burch, supra, 441 U.S. at 131; here, the jury was charged that its verdict had to be unanimous and petitioner has not shown that it was not.

17

Thus, as to this ground, the Petition is **denied**.

VI.     Petitioner's Sentence

A sentence within the range set by the State Legislature does not create a constitutional violation. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam). As respondent contends (Docket No. 10, Resp't Memo. at 9), where a sentence is below the maximum for an offense "a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal." Underwood v. Kelly, 692 F. Supp. 146, 153 (E.D.N.Y. 1988), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 837 (1989). Habeas review is only available where petitioner asserts that his sentence was imposed in such an arbitrary or capricious abuse of discretion to amount to a constitutional violation or an error of law resulting in a deprivation of liberty. White, supra, 969 F.2d at 1383.

Petitioner claims that he should have been sentenced to three years (the minimum for this offense) rather than five years since he provided testimony that he was employed and was liked in the community. This alone does not raise a constitutional issue. The sentence is within the range for that offense, see N.Y. Penal L. §§ 130.80 (class D felony); 70.06(3)(d) (second felony offender for class D felony, four to seven year term), 70.06(6)(c)(second felony for class D felony for violent felony offense, three to seven year term), 70.02(1)(c), (3) (§ 130.80 deemed a violent felony, with sentence term between two to seven years); see also id. § 70.00(2)(d), (3) (class D felony not deemed a violent felony has sentence term between one year and seven years) (cf. State Court Records, Ex. B, Appellate Record at A7, A13, sentence and notice of petitioner as second felony offender). Under the various sentencing permutations depending upon whether it was a repeat felony or a violent felony or both, petitioner's sentence of five years is within the

18

range of two or three or four years to seven years in prison.  Thus, habeas relief is **denied** as to this ground.

VII.    Certificate of Appealability

An appeal from a final order in a habeas corpus proceeding involving process issued by a state court requires a certificate of appealability before an appeal can be taken.  28 U.S.C. § 2253(c)(1)(A).  Under that statute "a certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322 (2003).  As discussed above, the claims raised by petitioner here do not make a substantial showing of the denial of a constitutional right.  There is an adequate independent state law ground that bars federal habeas review.  Thus, the Court **declines** to issue a certificate of appealability.

## CONCLUSION

The Amended Petition for Writ of Habeas Corpus (Docket No. 7, see Docket No. 1) is **denied** and this Court **declines** to issue a certificate of appealability.  Pursuant to Fed. R. App. P. 22(b)(1), petitioner may request a circuit judge of the United States Court of Appeals for the Second Circuit to issue the certificate of appealability.

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 4, 2008